NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250537-U

NO. 4-25-0537

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| SAMUEL L. DICKERSON, | ) | No. 25CF394 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in denying defendant pretrial release.

¶ 2    Defendant, Samuel L. Dickerson, appeals the circuit court's order denying him

pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725

ILCS 5/110-6.1 (West 2024)), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3    I. BACKGROUND

¶ 4    On March 19, 2025, defendant was charged with aggravated domestic battery

(720 ILCS 5/12-3.3(a) (West 2024)), domestic battery (*id.* § 12-3.2(a)(2)), and unlawful restraint

(*id.* § 10-3).

¶ 5    The same day, the State filed a verified petition to deny defendant pretrial release

under section 110-6.1(a)(4) of the Code (725 ILCS 5/110-6.1(a)(4) (West 2024)). The State

sought to detain defendant under the dangerousness standard. The State alleged officers from the Springfield Police Department were dispatched to the Midtown Inn on March 18, 2025. At the Midtown Inn, Salina Esteves reported defendant covered her face with a pillow, prevented her from leaving the motel room, struck her face, sprayed her eyes with "bug spray," and put his forearms around Esteves's neck, preventing her from breathing.

¶ 6　　　At the hearing on the detention petition, the State proffered the facts underlying the charges. According to the State, Esteves called the police on March 18, 2025, to report she was choked by her boyfriend, defendant. When officers arrived at the scene, they first spoke to defendant. Defendant asserted Esteves "was acting crazy." He said, when he tried to leave the apartment, he was scratched, but the officers saw no new scratches. Officers only observed "partially scabbed-over scratches" and "scar tissue." Defendant also told officers Esteves sprayed herself in the face with bug spray "to set him up."

¶ 7　　　The police officers then spoke with Esteves. According to Esteves, the altercation occurred inside the hotel room. At one point, defendant attempted to place a pillow on Esteves's face. Esteves pushed off defendant and tried to flee the hotel room. Defendant grabbed bug spray and sprayed it into Esteves's eyes. Defendant grabbed Esteves and prevented her from exiting the room. Defendant then put his forearm around Esteves's neck and pulled, momentarily blocking Esteves's airway. Defendant struck Esteves in the face. During the interview, one police officer noted an abrasion on Esteves's cheek. Police also observed Esteves's eyes were irritated and bright red and her clothing smelled of chemicals.

¶ 8　　　Officers further reported a witness observed defendant strike Esteves. This witness knew neither defendant nor Esteves and was staying in an adjacent hotel room. The witness told officers she heard a woman screaming for help. She then exited her room to

investigate and saw a female trying to leave a hotel room. The witness saw the female getting pulled back into the room, and she saw defendant strike Esteves. When officers spoke to defendant about a witness, defendant stated, "That white girl didn't see anything." The officers had not told defendant the race or gender of the witness.

¶ 9        The State further proffered defendant's criminal history. Defendant's criminal history included a 2024 possession of a controlled substance offense. For that offense, defendant was on conditional discharge when the charged offenses at issue in this case occurred. In a 2022 case, defendant pled guilty to domestic battery and was sentenced to 452 days in jail. Defendant had a 2021 conviction for aggravated fleeing, for which he was sentenced to two and a half years' imprisonment. Defendant had "a lot of theft cases," and the sentences ran concurrently to his sentence for aggravated fleeing. In 2013, defendant was convicted for aggravated battery causing great bodily harm and was sentenced to three years in the Illinois Department of Corrections.

¶ 10       Defendant appeared *pro se*. Defendant stated there was a video camera above the door of the motel room where the offenses allegedly occurred. Defendant pointed to his arm and said Esteves had scratched him and, "There's a scratch here." Defendant stated the video would show Esteves scratched him. Defendant asserted Esteves was "delusional and stuff" and saw a doctor to treat her mental illness. Esteves had told defendant she wanted him to be her "department of rehabilitation person, assistant." Defendant said she had helped him "with a lot of stuff," and he helped her. He had no issues with Esteves and reported he was not violent in the community. Defendant was a student at Penn Foster College. He did not have to live at the Midtown Inn. He had diabetes and high blood pressure.

¶ 11       Defendant denied spraying Esteves with bug spray. He urged the can be dusted

for fingerprints. When Esteves exited the room the first time, she had no injuries. After defendant "went to the front and talked to the manager of the hotel," Esteves "went and did that." Defendant stated he called the police to get his property and to take it to his mother's house. He also called his brother to help. Defendant stated, "He pulled up, he like this is a constant thing with her doing these bits of anger and rage and all type of stuff." Defendant stated Esteves "[a]cts up," "banging the walls and hollering." Defendant told her to give him his property, and Esteves responded by scratching him on the arm "in front of my camera." Defendant stated, "There was some white lady down the way saying she sprayed herself with bug spray," and defendant was certain that was captured on the video camera. Defendant stated he should be released so he could "go on with [his] business."

¶ 12    The circuit court found clear and convincing evidence the proof is evident and the presumption great defendant committed a detainable offense. The court further concluded defendant's pretrial release poses a real and present threat to persons in the community and no conditions can mitigate the real and present threat. In making these findings, the court relied on the nature and circumstances of the offenses, including that Esteves was choked, restrained, and sprayed with bug spray. The court further relied on defendant's criminal history, as it was indicative of violent, abusive, or assaultive behavior.

¶ 13    Defendant filed a *pro se* motion for relief from judgment pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In his motion, defendant argued the State failed to meet its burden of proving by clear and convincing evidence the proof is evident or the presumption great he committed a detainable offense. Defendant maintained there is no audio recording of Esteves making the statements in the police synopsis, the surveillance camera video refutes the officers' reports, and Esteves's clothing was not tested for bug spray. Defendant also

challenged the finding there was clear and convincing evidence his release posed a real and present threat to the safety of Esteves and the community. Defendant challenged the reliance on his criminal history, asserting his guilty pleas in those cases were, in part, based on duress, violations of his right to a speedy trial, and ineffective assistance of counsel. Defendant further argued the State failed to prove by clear and convincing evidence no condition or combination of conditions can reasonably mitigate the real and present threat he poses.

¶ 14 After the circuit court denied defendant's motion for relief, this appeal followed.

¶ 15          II. ANALYSIS

¶ 16 On appeal, the Office of the State Appellate Defender elected to stand on the motion for relief and did not file a memorandum on appeal. We thus consider the arguments defendant raised in his motion for relief. See Ill. S. Ct. Rule 604(h)(7) (eff. Apr. 15, 2024).

¶ 17 Each criminal defendant is eligible for pretrial release. See 725 ILCS 5/110-6.1(e) (West 2024). The State may seek the denial of pretrial release for a defendant under the dangerousness standard set forth in the Code. See *id.* § 110-6.1(a), (c). When seeking to detain a defendant pretrial under the dangerousness standard, the State must prove by clear and convincing evidence, "the proof is evident or the presumption great that the defendant has committed" an offense described in section 110-6.1(a) (*id.* § 110-6.1(e)(1)), "the defendant poses a real and present threat to the safety of any person or persons or the community" (*id.* § 110-6.1(e)(2)), and "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)(i)).

¶ 18 Our review of a detention order under the Code is either *de novo* or under the manifest-weight-of-the-evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. The

standard is set by the manner in which the evidence is presented at the detention hearing. When live testimony is presented, we will not disturb that decision unless it is against the manifest weight of the evidence. *Id.* When, however, the evidence is presented by proffer and no live testimony is presented, our review is *de novo*. *Id.* This case presents the unique circumstance where defendant, representing himself, made his own proffer by giving his own version of the events leading to the charges. Thus, here, the circuit court, in rejecting defendant's version of the events, made a decision as to defendant's credibility. In that circumstance, it seems the manifest-weight-of-the-evidence standard would apply even though no live testimony was presented. *Cf. id.* We need not, however, decide which standard of review applies, as we find defendant is properly detained under either standard.

¶ 19 We begin with defendant's assertion the State failed to prove by clear and convincing evidence the proof is evident or the presumption great he committed a qualifying offense and find it unpersuasive. Defendant was charged with qualifying offenses. See 725 ILCS 5/110-6.1(a)(4) (West 2024). In addition to Esteves's statements, the officers' observations of defendant's arm and Esteves's facial injury, as well as the independent witness's statement she saw defendant strike Esteves and pull her into the room, provide the threshold clear and convincing evidence needed for proof of this element.

¶ 20 We next turn to defendant's argument the State failed to prove by clear and convincing evidence he poses a real and present threat to the safety of any person or persons or the community and find it unconvincing. In his motion for relief, defendant's challenge to this finding is based on his brief and unsupported assertion the convictions in his criminal history were improperly and unconstitutionally obtained. Because the record contains no evidence related to those convictions, we cannot review his allegations. We find the State's proffer clearly

and convincingly proved defendant poses a real and present threat to the safety of Esteves and the community. Under the Code, a circuit court may consider multiple factors in determining the danger, if any, a defendant poses to the safety of a person or persons or the community. 725 ILCS 5/110-6.1(g) (West 2024). These factors include "[t]he nature and circumstances of any offense charged" (*id.* § 110-6.1(g)(1)), "the history and characteristics of the defendant including *** [a]ny evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior" (*id.* § 110-6.1(g)(2)(A)), and "[w]hether, at the time of the current offense ***, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of a sentence for an offense" (*id.* § 110-6.1(g)(8)). The circumstances of defendant's qualifying offense for aggravated domestic battery include more than his strangling of Esteves. Defendant also pulled Esteves back into the room, struck her, and sprayed her eyes with bug spray. In addition, defendant's criminal history includes violent behavior, including domestic battery, and shows the charged offenses were committed while defendant was on conditional discharge.

¶ 21    Last, we find the State proved by clear and convincing evidence the threat defendant poses could not be reasonably mitigated with conditions. As the State argued, defendant was on conditional discharge when the charged offenses were committed, undermining any argument defendant would comply with pretrial-release conditions should he be released. Moreover, conditions such as GPS monitoring and house arrest would not reasonably protect individuals in defendant's family or household.

¶ 22    The circuit court did not err in granting the State's petition to deny defendant pretrial release.

¶ 23                                    III. CONCLUSION

- 7 -

¶ 24       We affirm the circuit court's judgment.

¶ 25       Affirmed.